**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>ORACLE CORPORATION,<br><br>Respondent. | Misc. Case No. 7:26-mc-325<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

**NEURAL AI'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY ORACLE CORPORATION**

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND ........ 2

A. The Underlying Litigation ........ 2

B. The Rule 45 Subpoena to Oracle and Oracle's Initial Objections ........ 3

C. NAI's Meet-and-Confer Efforts and Oracle's Continued Non-Compliance ........ 3

II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. ........ 5

III. ORACLE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ... 6

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims ........ 7

B. Oracle Has Not Substantiated Burden and NAI Offered Narrower Alternatives. .. 9

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................6, 7, 9

*Camoco, LLC v. Leyva*,
333 F.R.D. 603 (W.D. Tex. 2019) ....................6

*FG SRC LLC v. Xilinx, Inc.*,
2022 WL 22997130 (D. Del. Apr. 11, 2022) ....................8

*Flores v. Lowes Home Centers, L.L.C.*,
2023 WL 3959399 (W.D. Tex. June 12, 2023) ....................6

*Kim v. NuVasive, Inc.*,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ....................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................8

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
2024 WL 221448 (W.D. Tex. Jan. 18, 2024) ....................5

*Neural AI, LLC v. NVIDIA Corp.*,
Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ....................1, 2, 3, 5

*Waller v. Jet Specialty, Inc.*,
2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....................6

**Rules**

Fed. R. Civ. P. 26 ....................6

Fed. R. Civ. P. 26(b)(1) ....................6

Fed. R. Civ. P. 45 ....................3, 5, 6

Fed. R. Civ. P. 45(c)(2)(A) ....................6

Fed. R. Civ. P. 45(d)(2)(B)(i) ....................5, 6

This motion arises from *Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action pending in this District. In the Underlying Action, Neural AI, LLC ("NAI") alleges that NVIDIA Corporation's ("NVIDIA") GPU-accelerated hardware and software infringe three patents covering GPU-based accelerated computing systems and methods. *See* Exhibit 1. The patents-in-suit are U.S. Patent No. 8,648,867 (the "'867 Patent") (Exhibit 2), Reissue Patent No. RE48,438 (the "'438 Patent") (Exhibit 3), and Reissue Patent No. RE49,461 (the "'461 Patent") (Exhibit 4) (collectively, the "Asserted Patents"). Each is titled "Graphic Processor Based Accelerator System and Method."

NVIDIA disputes whether customers configure and use the accused products as NAI alleges and contends that NAI needs customer evidence to prove indirect infringement and its extent. Respondent Oracle Corp. ("Oracle") is a major NVIDIA customer and end user, and possesses evidence of real-world deployment that NVIDIA claims it does not. *See* Laiche Decl. ¶¶ 26–27.

NAI served Oracle on June 24, 2026, with subpoenas for documents and corporate testimony seeking targeted information about whether, how, and when Oracle combines, configures, and uses NVIDIA hardware and software in real-world systems. Exhibit 5. Oracle objected to every request and topic, produced no documents, and designated no witness. *See* Exhibit 9; Laiche Decl. ¶ 28. Instead, on August 10, Oracle served a declaration that introduced qualifications and factual assertions about its use of NVIDIA technology while omitting the deployment details necessary to test or evaluate those assertions. *See* Exhibit 22. NAI identified those material gaps the next day and requested further engagement. *See* Exhibit 21. To date, Oracle has provided no documents, no witness, no supplemental declaration, and no timetable for compliance.

NAI asks the Court to compel production responsive to Requests 1–12 on a rolling basis and testimony on Deposition Topics 1–5.

## I. FACTUAL BACKGROUND

### A. The Underlying Litigation.

The Underlying Action asserts direct, indirect, and induced infringement by NVIDIA of claims 16–19 of the ’867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the ’438 Patent; and claims 21–25 and 27–30 of the ’461 Patent (collectively, the “Asserted Claims”), which cover GPU-accelerated computing systems and methods. *See* Exhibits 1–4.

NAI’s January 20, 2026 Final Infringement Contentions identify integrated combinations of NVIDIA hardware—including GPUs, supercomputers, and servers—and GPU-accelerated software, including CUDA, cuDNN, TensorRT, and higher-level frameworks, as the Accused Products and allege that NVIDIA encourages customers to combine, configure, and use them in an infringing manner. *See* Exhibit 7 at 2–9. NVIDIA admits it sells and supports those products but denies infringement and disclaims knowledge of customer use. *See* Exhibit 8 ¶¶ 18, 20–23, 87, 131, 171. It has also stated that NAI must obtain deployment evidence from customers and end users, making customer evidence directly relevant to NAI’s infringement claims. Laiche Decl. ¶¶ 26–27.

Oracle is a major NVIDIA customer and cloud infrastructure provider. In October 2022, Oracle and NVIDIA announced a multi-year partnership to bring the full NVIDIA accelerated computing stack to Oracle Cloud Infrastructure, including tens of thousands of NVIDIA A100 and H100 GPUs. *See* Exhibit 14. By April 2025, Oracle had deployed thousands of Blackwell GPUs, including liquid-cooled GB200 NVL72 rack-scale systems, and planned superclusters of more than 100,000 GPUs. *See* Exhibits 15–16. These deployments bear directly on whether the accused methods are practiced and whether NVIDIA induced or contributed to any infringement.

### B. The Rule 45 Subpoena to Oracle and Oracle's Initial Objections.

NAI served Oracle on June 24, 2026, with Rule 45 subpoenas for documents and corporate testimony that designated Austin, Texas, as the place of compliance. *See* Exhibits 5–6. The document subpoena contains twelve targeted requests about how Oracle configures, integrates, and uses NVIDIA GPUs and related software. The requests seek evidence about Oracle's software stack, system architecture, data paths, memory handling, and execution, bearing directly on NAI infringement claims. *See* Exhibits 5 and 7. The deposition subpoena seeks testimony on the same core subjects, including the NVIDIA software and sample source code Oracle uses, Oracle's customizations and data inputs, and how GPU results are stored, transferred, and reused. *Id.* The Subpoenas are limited to September 13, 2018 to the present and to U.S.-based activity or activity supporting or directed toward U.S. operations. *See id.* at 15

Oracle's responses were originally due July 8, 2026. At Oracle's request, NAI extended the deadline to July 16. *See* Exhibit 10. Oracle then objected to every request on grounds of undue burden, overbreadth, vagueness, lack of proportionality, confidentiality, and the availability of alternative sources, and it still has not agreed to produce responsive documents or designate a witness. *See* Exhibit 9; Laiche Decl. ¶ 28.

### C. NAI's Meet-and-Confer Efforts and Oracle's Continued Non-Compliance.

Counsel met and conferred on or about July 22 and July 31, 2026, about the scope of the Subpoenas and targeted ways to reduce Oracle's burden. *See* Exhibit 11 at 3–6. Oracle said it was still investigating and could not commit to substantive answers. *Id.*

To narrow the issues, NAI sent focused technical questions on July 24 identifying the NVIDIA products, configurations, data paths, usage frequency, and U.S. nexus at issue. Exhibit 10 at 2. NAI went further still. On July 28, NAI sent a draft declaration that Oracle could revise

and execute in lieu of broader document production or a deposition. *See* Exhibit 11 at 3; Exhibit 13. The declaration was intended to provide a non-burdensome path to resolution: if Oracle could confirm that it did not modify NVIDIA hardware or software in a manner relevant to NAI's infringement allegations and instead used NVIDIA's products as NVIDIA designed and instructed, that confirmation would satisfy NAI's need for additional discovery. If Oracle could not make those representations, however, that would confirm the need for further discovery into what modifications or configurations Oracle made and whether they bear on induced infringement.

On August 10, without giving NAI any advanced notice or chance to review, Oracle sent NAI a declaration signed by [redacted] designated the declaration as its "amended response to Neural AI's subpoena." *See* Exhibits 21, 22; Laiche Decl. ¶ 28. NAI's offer to accept a declaration in lieu of further discovery was conditional on resolving material gaps, and the [redacted] declaration did not do so. If anything, it underscored why further discovery from Oracle remains necessary. Rather than resolving the relevant facts, the Oracle declaration introduced new qualifications impinging on infringement and left key issues unanswered.

For example, the declaration adds exceptions [redacted] raising questions about how Oracle modifies this code and whether those changes affect the accused functionality. Exhibit 22 ¶ 8. It says only that [redacted], which does not address whether Oracle's use of NVIDIA software implements or causes those functions. *Id.* And it states that [redacted], without establishing how Oracle's systems actually operate. *Id.* ¶ 9.

The declaration likewise leaves unresolved [redacted]

[redacted]—technology that may alter the data flows implicated by the Asserted Claims. *Id.* ¶¶ 10, 13–14, 18. These gaps create potential noninfringement arguments while withholding the operational facts NAI needs to evaluate and rebut them.

NAI identified these deficiencies and more on August 11 and requested another meet and confer. *See* Exhibit 23 at 1–2. Oracle did not supplement its declaration, produce documents, designate a witness, or propose a conference.

On August 16, 2026, Oracle retained new counsel, who said he would consult with Oracle about the outstanding issues. *See* Exhibit 23. Nevertheless, as of the filing of this Motion, Oracle had not committed to produce documents, designate a witness, supplement the declaration, or propose a timeline. Laiche Decl. ¶ 28. Document discovery in the Underlying Action closed on August 11, 2026, deposition discovery closes on September 16, 2026, and NVIDIA agreed to extend NAI's deadline for third-party document discovery motions through August 18, 2026; Laiche Decl. ¶ 25. NAI cannot allow an open-ended investigation to consume the remaining discovery period. It seeks court intervention while remaining willing to consider prompt and complete discovery that resolves the dispute.

## II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER

Rule 45(d)(2)(B)(i) directs a party seeking to compel compliance to apply to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024). For document subpoenas, Rule 45(c)(2)(A) permits production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."

Here, the Austin, Texas place of compliance satisfies Rule 45(c)(2)(A). Oracle regularly

transacts business in person in Austin through its World Headquarters at 2300 Oracle Way, Austin, TX 78741, a 560,000-square-foot Class A office campus, as well as through its other Texas offices and data center facilities. *See* Exhibits 18–20. Because the designated place of compliance is proper, this Court has jurisdiction to resolve this Motion.

## III. ORACLE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "'[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.* (quoting *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019)).

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.,* 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); *see also 611 Carpenter LLC v. Atlantic Casualty Ins. Co*., 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

### A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.

NVIDIA has made customer deployment—not merely product capability—a disputed issue. It contends that selling the accused products does not prove customers configure and use them as alleged and that NAI needs customer evidence to prove indirect infringement and its extent. *See* Laiche Decl. ¶ 26. Oracle is a significant NVIDIA customer and/or end user. Oracle is a cloud infrastructure provider that deploys NVIDIA's accelerated computing stack at massive scale, including tens of thousands of A100, H100, and Blackwell GPUs and planned superclusters exceeding 100,000 GPUs. *See* Exhibits 14–16. Oracle's records and testimony can show whether and how often the asserted methods are actually performed in a real-world system.

Those records are uniquely within Oracle's possession. NVIDIA may know what it designed and distributed, but it claims it does not have Oracle's internal architecture diagrams, container and environment configurations, production settings, profiler traces, or memory-allocation records, and it has disclaimed meaningful insight into customer deployment. *See* Laiche Decl. ¶ 26–27. At a discovery hearing, NVIDIA said NAI would need to seek real-world deployment evidence from customers and end users. *See* Laiche Decl. ¶ 26. NAI did so.

**The twelve document requests** seek discovery tied to the Asserted Claims in the Underlying Action, and track the accused computation from software selection through input, execution, memory, and output to establish infringement. *See* Exhibit 5.

- **Requests 1–4** seek documents sufficient to identify the software, frameworks, libraries, APIs, configurations, and custom code Oracle uses on NVIDIA GPUs, including NVIDIA software and sample code and any modifications. They show which accused products Oracle deployed and whether Oracle used them as provided or materially modified them.

- **Requests 5–6** seek architecture, design, data-flow, control-flow, and execution-flow materials showing whether Oracle's computations involve neural networks, layers, and outputs used as inputs to later neurons or layers. They show whether Oracle's systems perform the claimed GPU-accelerated operations and how the accused hardware and software work together.

- **Requests 7–10** address the claimed memory and data paths, including pointer, buffer, and intermediate-result reuse; GPU-memory allocation; movement of inputs from CPU, host, storage, sensor, camera, or network sources into GPU memory; and storage, transfer, accumulation, reuse, or return of outputs and intermediate results. They target the memory-management and data-transfer limitations in the Asserted Claims.

- **Requests 11–12** seek documents sufficient to show how GPU computations are scheduled, queued, synchronized, parallelized, launched, and executed, and how inputs, commands, model or parameter changes, interruptions, or output changes affect GPU-queue placement. They target the claimed coordination and control of GPU computations.

These requests thus target the facts relevant to whether Oracle's systems perform the asserted method steps and whether NVIDIA's software, instructions, and support cause or encourage that use. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (stating that a patentee must show all steps of a claimed method were performed to prove indirect infringement and that damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom").

The requests are also bounded and particular. Each seeks only documents "sufficient to show" an identified technical fact. *See* Exhibit 5. The Subpoena is limited to September 13, 2018 to the present and to U.S.-based or U.S.-directed activity. *Id.* at 15.

**The five deposition topics** seek testimony on the same subjects as the document requests and direct Oracle to designate one or more knowledgeable persons on five topics. *See* Exhibit 5.

- **Topic 1**: the NVIDIA software and libraries Oracle uses to perform computations on NVIDIA GPUs;

- **Topic 2**: NVIDIA sample source code Oracle uses, in whole or in part;

- **Topic 3**: Oracle's customizations and data inputs that alter how NVIDIA software performs computations;

- **Topic 4**: identification of Oracle software that uses NVIDIA GPUs to perform computations; and

- **Topic 5**: how output and intermediate GPU results are stored, referenced by pointers, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

The testimony is proportional because it is limited to five topics tracking the twelve requests, the same defined period, and the same U.S. nexus.

The information is central to the issues in dispute, uniquely within Oracle's possession, and sought through targeted, time-limited requests and topics. Oracle should be compelled to produce it.

### B. Oracle Has Not Substantiated Burden and NAI Offered Narrower Alternatives.

Oracle's burden objections are boilerplate and do not identify the burden of producing any particular category or explain how the burden applies to a particular request. Such objections do not satisfy the requirement to state the grounds with specificity or establish undue burden. *See 611 Carpenter*, 2024 WL 1977160, at *1.

Oracle also calls the Subpoenas vague and overbroad, objecting that the definition of "NVIDIA GPUs" "appears to span every or virtually every NVIDIA GPU ever released." Exhibit 9 at 6. But that definition tracks the Accused Products identified in NAI's infringement contentions (Exhibit 7 at 2–9), and the requests seek documents "sufficient to show" facts about products Oracle actually deploys.

NAI also took substantial steps to minimize burden. NAI first spent months pursuing this information directly from NVIDIA, turning to third-party discovery only after NVIDIA repeatedly represented that it lacked information concerning how customers and end users deploy its accused hardware and software. Laiche Decl. ¶ 26–27. It then identified the implicated products and systems,

supplied focused questions, offered a draft declaration in lieu of document production or a deposition, and invited Oracle to identify specific burdens. Oracle has not proposed a defined search, production date, revised declaration, or witness. *See* Exhibits 11–13; Laiche Decl. ¶¶ 26–27.

Oracle's declaration makes discovery more necessary, not less. It adds exceptions for [redacted], raising questions about what Oracle modifies and whether those changes affect the accused functionality (Exhibit 22 ¶ 8); states only that [redacted] without addressing whether NVIDIA software itself implements those functions (*id.*); and says [redacted] without establishing how its systems actually operate (*id.* ¶ 9). The declaration also leaves unresolved [redacted]. *See generally id.* These gaps create potential noninfringement issues while withholding the operational facts NAI needs to evaluate them.

NAI offered to accept a declaration in lieu of broader discovery only if it resolved material gaps. Oracle had no basis to convert that conditional compromise into a unilateral declaration that its obligations were satisfied. *See* Exhibits 11, 21–22; Laiche Decl. ¶ 28.

## IV. CONCLUSION

For the foregoing reasons, NAI respectfully requests that this Court (1) compel Oracle to produce nonprivileged documents responsive to Requests 1–12 on a rolling basis to be completed within twenty-one (21) days of the Court's order, and (2) compel Oracle to designate and produce a knowledgeable witness on Deposition Topics 1–5 within thirty (30) days of the Court's order.

Dated: August 18, 2026

Respectfully submitted,

*/s/ Rocco Magni*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on August 18, 2026, a true and correct copy of the foregoing document was served on counsel for Oracle Corporation and all counsel of record in the underlying action.

*/s/ Rocco Magni*
Rocco Magni

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party Oracle Corporation regarding the issues raised in this Motion, including through Zoom conferences on or about July 22, July 31, and August 7, 2026, and related email correspondence. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Rocco Magni*
Rocco Magni